431 A.2d 964

**COMMONWEALTH of Pennsylvania, Respondent,**

v.

**George WILLIAMS, Petitioner.**

Supreme Court of Pennsylvania.

Argued April 28, 1981.

Decided July 8, 1981.

Margaret H. Poswistilo, Asst. Public Defender, for petitioner.

Allan Goodman, Asst. Dist. Atty., James Connell, Bethleham, for respondent.

Before ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION OF THE COURT

WILKINSON, Justice.

Petitioner was arrested and indicted for robbery and conspiracy. At the time of his arrest one of two co-conspirators was shot and killed as he attempted to flee. A motion to suppress certain evidence obtained at the time of the warrantless arrest, such as the "loot" from the robbery which had occurred a matter of minutes before and which was found in the room from which the felons were fleeing, was denied. The petitioner was found guilty. The court of common pleas en banc overturned the ruling of the suppression court and granted a new trial. After the second trial petitioner was again found guilty. Post trial motions were denied with a twenty-three page opinion. On appeal to the Superior Court, with five judges participating, the trial court was affirmed with a sixteen page majority opinion, two judges dissenting with a twelve page opinion, reported at 262 Pa.Super. 508, 396 A.2d 1286 (1978). As must be apparent from the above there are no easy answers to the difficult questions presented here. Twice the petitioner has been found guilty with more than ample apparently obvious evidence to support the guilty verdict. In the first case, as indicated, the trial court granted a new trial based on its acceptance of evidence that it later considered should have

been suppressed. Unfortunate as it may be, once again the judgment of sentence must be reversed and the case remanded for yet a third trial.

A juror in the second trial, disregarding the judge's instructions, during the course of the trial, read a newspaper account of the current trial that referred to the fact that the petitioner had previously been convicted of this offense but was being retried and certain evidence in the hands of the district attorney which was used in the first trial could not be used in this one. This in itself might have been enough to require a new trial but there was more. The jury who read the newspaper article was sufficiently impressed by the account to discuss it with a fellow juror who had not seen it. Having thus so flagrantly disregarded the trial court's instructions not to read accounts of the trial or to discuss the trial with anyone, even other jurors, until the case was committed to them, we cannot agree with the majority of the Superior Court that these two jurors could, would, and did adhere to the court's admonition to disregard the newspaper account that additional evidence guilt was available but not being offered, and, most importantly, that the petitioner had been convicted previously of this same offense which conviction was reversed because of a "technicality". See Commonwealth v. Heacock, 467 Pa. 214, 355 A.2d 828 (1976); Commonwealth v. Santiago, 456 Pa. 265, 318 A.2d 737 (1974).

A second question was raised on which the Superior Court was divided as a matter of principle but seemed to agree that it would not have affected the outcome of this case. Because of the third retrial we will comment on it briefly. The Superior Court's opinions, supra, discuss the facts, issues, and decided cases in this and other jurisdictions in great detail making it unnecessary to repeat them here. The short of it is that for nine days the policy observed an apartment to determine who was in it and what they were doing. The police had reason to believe an escaped convict would come there. They had a warrant for his arrest, but no "search warrant" to observe the apartment. The apart-

ment was on the third floor. The police observation post was thirty to forty feet away, across the street, on the third floor. Petitioner did not place covers over the windows. As a result, at all times, other than in darkness, the officers could observe the activities within the apartment with their naked eyes and with binoculars. Sometimes, after dark, if the lights were off, but the television was on, it supplied enough light to observe some limited activity.

The difficult issue of impermissible warrantless search arises when the police introduce a startron which permitted the officers to see what went on in the apartment when the lights were out and the television off. Following *Commonwealth v. Hernley*, 216 Pa.Super. 177, 263 A.2d 904 (1970), *allocatur denied, cert. denied*, 401 U.S. 914, 91 S.Ct. 886, 27 L.Ed.2d 813 (1971), the trial court and the majority of the Superior Court held the petitioner had not taken appropriate steps, *i. e.*, provided curtains or blinds, to insure privacy. The dissenting judges felt otherwise, relying on *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). However, the minority agreed that the critical evidence supporting conviction was obtained by observations made by other than the startron. We mention it in this opinion to the end that the prosecuting authorities on the third trial will not introduce evidence obtained by use of the startron.

It is not necessary at this time and in this case to hold that every time a startron or other device that "sees" through darkness is used by authorities to obtain evidence without a search warrant the evidence must be suppressed. However, when such a device is used for nine days to observe a private apartment frequented by other than those sought by the police, including two acts of sexual intercourse not involving the person, the subject for detection, for whom the surveillance was established, then the warrantless observation of a third floor apartment in darkness has truly impermissibly invaded privacy to which all citizens, including petitioner, are guaranteed by the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Judgment of sentence is reversed and the case is remanded for a new trial.

O'BRIEN, C. J., did not participate in the consideration or decision of this case.

ROBERTS and LARSEN, JJ., concurred in the result.

KAUFFMAN, J., dissented.